IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

Spring 2024 Term

_____

No. 23-ICA-217

_____

FILED

June 25, 2024

released at 3:00 p.m.
ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

PHILLIP D. TICE,
Defendant Below, Petitioner,

v.

JOHN S. VEACH,
Plaintiff Below, Respondent.

_____

Appeal from the Circuit Court of Randolph County
Honorable David H. Wilmoth, Judge
Civil Action No. CC-42-2017-C-125

AFFIRMED
_____

Submitted:  May 21, 2024
Filed:  June 25, 2024

Braun Hamstead, Esq.                          Harry A. Smith, III, Esq.
Hamstead & Associates, L.C.                   Jory & Smith, L.C.
Charles Town, West Virginia                   Elkins, West Virginia
Counsel for Petitioner                        Counsel for Respondent

CHIEF JUDGE SCARR delivered the Opinion of the Court.

SCARR, CHIEF JUDGE:

Petitioner Phillip D. Tice appeals two orders, the Final Order Establishing Location of Granted Easement which was entered by the Circuit Court of Randolph County on October 18, 2022, and the April 28, 2023, Final Order Following Hearing of February 13, 2023, which denied Mr. Tice's motion to alter or amend the circuit court's earlier order pursuant to Rule 60(b) of the *West Virginia Rules of Civil Procedure*.

The orders on appeal stem from further proceedings held by the circuit court in response to the mandate issued by the Supreme Court of Appeals of West Virginia in *Tice v. Veach*, No. 19-1117, 2021 WL 816141 (W. Va. March 3, 2021) (memorandum decision) ("*Veach I*"), which affirmed the jury's finding of an express, deeded right-of-way, reversed the jury's finding of a prescriptive easement, and remanded the matter for entry of an order consistent with its decision.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In April 1960, Owen Lutz, grantor to Mr. Veach, and Eunice McLaughlin, predecessor-in-title to Mr. Tice, entered into a Right of Way Agreement which restated and defined a right-of-way reserved in an earlier deed. *Veach I* at *2. Under this agreement, Mr. Veach holds an express, deeded right-of-way across what is now Mr. Tice's land. *Id*. at *1. There is no dispute concerning the existence of this right-of-way, but the parties have disagreed as to its location.

1

When Mr. Veach purchased his parcel in 1990, his grantor, Mr. Lutz, walked and drove with him across the right-of-way. *Id*. at *3. According to Mr. Veach, there was a gravel driveway that provided access from Secondary Route 24. *Id.* The driveway went uphill to a small, flat, graveled space, then straight through a gate. *Id*. After passing through the gate, the right-of-way made a left turn, then a right turn, then went straight to a gate at what is now Mr. Veach's property. *Id.*

The parties to the 1960 agreement did not have the right-of-way surveyed at the time of their agreement, *Id*. at *1, but Mr. Veach subsequently had a survey done by Donald L. Teter ("Surveyor Teter") resulting in a 1992 Plat of Survey ("1992 Plat."). *Id.* at *4. "For approximately twenty-six years, Mr. Veach and his employee crossed Mr. Tice's property along what they thought was the right-of-way—a route that cuts through Mr. Tice's hayfield and close to a combined garage/apartment constructed around 2000." *Id.* at *1. However, in approximately 2016, Mr. Tice disputed the location of this route, telling one of Mr. Veach's employees that he was not using the designated right-of-way. *See Id*. at *4.

Mr. Veach filed suit against Mr. Tice in October of 2017, seeking a declaration that he held a right-of-way pursuant to express and prescriptive easements over Mr. Tice's property in the location depicted on the 1992 Plat. Mr. Tice did not deny the existence of a deeded right-of-way, but he did contest where it was located.  In addition, he

2

challenged Mr. Veach's allegation that there was a prescriptive easement in the same location.

A jury heard the matter in July of 2019 and returned two verdicts. First, it found that Mr. Veach had established a deeded right-of-way as represented on the 1992 Plat, and that it was fourteen-feet wide.[1] The jury also found that Mr. Veach had proven a prescriptive easement by clear and convincing evidence. The circuit court entered its original Judgment Order on August 30, 2019, reflecting the jury's verdicts. Consistent with the jury's verdict form, the Order stated:

> 1. That Plaintiff, John S. Veach, has an express, deeded, right-of-way across a tract of real estate owned by Defendant, Phillip D. Tice, said real estate being a 17-acre tract situate in Beverly District, Randolph County, West Virginia, conveyed to Defendant by Denzil R. Rice [sic.] and Margaret R. Tice, by deed dated February 7, 1994, of record in the Office of the Clerk of the County Commission of Randolph County, West Virginia, in deed Book 431 at page 57.
>
> 2. That said express, deeded, right-of-way has a width of 14 feet, the centerline of which is as surveyed and platted by Donald L. Teter, licensed land surveyor, and as described as "R/W" (being approximately 1,032.4 feet in length) on a plat of survey, entitled Plat of Survey for John S. Veach, admitted

---

[1] On JURY VERDICT FORM A (Express Deeded Right-of-Way), the foreperson put an X in front of the line saying that: "We, the jury, find by a preponderance of the evidence, that the location of the express, deeded, right-of-way is as claimed by Plaintiff John S. Veach." The jury also completed a line concerning the width of the right-of-way indicating that it was fourteen feet wide. When the verdict was read, the circuit court inquired as to whether the verdicts were unanimous and then polled the jury. Mr. Tice "did not challenge the sufficiency of the evidence of the location of the express, deeded right-of-way before the trial court in a motion for judgment as a matter of law under *West Virginia Rule of Civil Procedure* 50(a) or (b)." *Veach I* at *5.

3

as evidence (Exhibit M) in the trial herein; a copy of said plat of survey, reduced in size, is attached hereto and incorporated herein as part of this Judgment Order.

3. That Plaintiff, John S. Veach, has a prescriptive easement across said 17-acre tract of real estate owned by Defendant, Philip [sic] D. Tice, the centerline of said prescriptive easement being as surveyed and platted by Donald L. Teter and as specifically described in the preceding paragraph of this Judgment Order.

*Veach I* at *5

Also included in this Order was the following paragraph:

That if this Judgment Order is not appealed, or if it is affirmed on appeal, the Court will conduct further proceedings, as initiated by either of the parties, as may be necessary, including: (1) designation of a permanent location of the right-of-way on the ground, and (2) such documentation as may be required to index the verdict herein in the land records of Randolph County, West Virginia, so as to provide proper and effective notice in the parties' chain of title.

Mr. Tice filed a post-trial motion to set aside the verdicts. The motion was denied by the circuit court and Mr. Tice appealed. In *Veach I*, the Supreme Court of Appeals of West Virginia affirmed the jury's finding of an express, deeded right-of-way as located on the 1992 Plat, noting that "[a]t trial, the jury found that the right-of-way was located as Mr. Veach claimed: through Mr. Tice's hayfield and near his garage." *Veach I* at *1. It reversed that part of the judgment finding a prescriptive easement with the same location and width as the deeded easement because Mr. Veach's passage across Mr. Tice's property could not be adverse to Mr. Tice's interest if it followed a deeded right-of-way. A portion

4

of the 1992 Plat showing the right-of-way was incorporated in the court's opinion. See Figure 1.



*Figure 1*

On remand, the circuit court entered an amended judgment order on July 6, 2021, vacating the jury's verdict regarding the prescriptive easement. In that order, the circuit court observed that "the Supreme Court found no fault with the substance of this Court's Judgment Order insofar as it was determined that Plaintiff John Veach is vested with a granted easement over the lands of Defendant Philip Tice and that said granted easement is bounded and described on a plat rendered by surveyor Donald Teter adopted in the Memorandum Decision as 'Figure 1.'"

Also on July 6, 2021, the circuit court entered its Procedural Order for Establishing Location of Granted Easement. This Procedural Order noted that the court had

provided for these subsequent proceedings in its original Judgment Order, and that the parties had agreed on the procedure for permanently designating the right-of-way. According to this agreement, Donald L. Teter, the surveyor who had prepared the 1992 Plat, was to mark the center line of the entire granted right-of-way based upon the 1992 Plat admitted at trial, the relevant portion of which was made part of the opinion in *Veach I*. Surveyor Teter would place temporary stakes on the center line at such distances as might be reasonably necessary to identify the right-of-way, including all points set forth on the 1992 Plat, and permanent markers would be placed to mark the right-of-way once any disputes concerning the location of the center line were resolved.

Under the parties' agreement, Mr. Tice and/or a surveyor of his choosing could be present when Surveyor Teter performed his survey work. According to the Procedural Order, "[i]t [wa]s understood by the parties that these procedures [we]re designed to ensure that there [would] be no dispute regarding the outcome of the survey work." However, under the parties' agreement, Mr. Tice had the right to file written objections to dispute the results of Surveyor Teter's survey.

Surveyor Teter completed a Plat of Survey on September 19, 2021 ("2021 Plat"). See Figure 2.

6



*Figure 2*

On November 8, 2021, Mr. Tice filed his written objection to Surveyor Teter's findings. On December 7, 2021, Mr. Tice filed a supplement to that objection, and on February 28, 2022, he filed a second supplemental objection.

In his second supplemental objection, Mr. Tice argued that according to Dale Bennett ("Surveyor Bennett"), who had been retained by Mr. Tice, Surveyor Teter's depiction of the right-of-way incorporated in the *Veach I* opinion was inadequate for identifying the deeded right-of-way and did not comport with surveying standards; the 2021 Plat materially deviated from the 1992 Plat that Surveyor Teter was required to use to mark the property; Surveyor Teter's 1992 and 2021 Plats were not "proper" surveys because they were solely based on evidence of alleged usage relevant to a prescriptive, rather than a granted, easement ("'tire tracks' in Mr. Tice's field" and "light colored areas depicted in historic photos"),[2] and the 1960 grant was inconsistent with Surveyor Teter's surveys.

---

[2] Contrary to Mr. Tice's position, evidence of usage can be relevant and admissible when express grants are involved instead of prescriptive easements. Such evidence may be appropriate to help define the location of an express grant where the language of the grant is not precise but is nevertheless ascertainable using extrinsic evidence such as usage. *See Rhodes Cemetery Ass'n. v. Miller,* 122 W. Va. 139, 7 S.E.2d 659 (1940); *cf. Palmer v. Newman*, 91 W. Va. 13, 112 S.E. 194 (1922) (determining width of right of way); *see generally* 28A C.J.S. *Easements* § 206, Westlaw (database updated May 2024) ("In the absence of a specific location or 'call,' later conduct can elucidate use by the dominant tenant and acquiescence, if any, by the servient tenant, …with respect to affixing the location of an easement…"); Jon W. Bruce, James W. Ely, Jr., and Edward T. Brading, *The Law of Easements & Licenses in Land* § 7:6, Westlaw (database updated March 2024) (usage is a factor which may be considered in determining the location of an express easement which is not adequately described in the creating instrument).

According to Mr. Tice, the 2021 Plat conflicted with the express language of the deeded right-of-way found in Deed Book 219 at page 515, dated April 25, 1960, which stated that:

> [T]he private road right of way leading from State Secondary Road No. 24 shall run from said State Secondary road in a westerly direction over the driveway or lane leading to the house located on said 30.062 acre tract; thence the same shall continue in a southwesterly direction around and to the South of a tool shed now located on said premises; thence in a northwesterly direction a straight line to the line fence separating the property of the parties of the first part and the party of the second part.

On this issue, Mr. Tice claimed that the deeded right-of-way was not intended to run between the servient owner's house and the old tool shed, but rather, it was intended to run to the south of residential structures, thereby limiting the right-of-way's interference with the servient owner's, i.e., Mr. Tice's, peace and enjoyment of his property. According to Surveyor Bennett, the right-of-way:

> [S]hall run in a Westerly Direction over driveway, Thence in a Southwesterly Direction and to the South of a Tool Shed, Thence in a Northwesterly Direction in a Straight Line to Line Fence . . . . [Surveyor] Teter's Temporary Markers . . . start[] at Secondary Route 24 and All Calls follow a Northwesterly direction, entirely to the Veach Property Line.

Mr. Tice went on to state that Surveyor Teter's survey resulted in the right-of-way lying within the footprint of a garage apartment, the construction of which Mr. Tice

9

had largely completed, prior to Mr. Veach giving notice of his intent to use the right-of-way. It was Mr. Tice's position that Surveyor Teter's 2021 Plat failed to adhere to the right-of-way affirmed in *Veach I* and, thus, the 2021 Plat was flawed and could not be accepted. For those reasons, Mr. Tice requested: (1) rejection of the 2021 Plat; (2) a determination that the granted right-of-way should run to the South of Mr. Tice's garage and associated septic tank field, and (3) an order requiring the parties to mediate. To the extent it might be necessary to modify the circuit court's Final Judgment, Mr. Tice requested relief pursuant to *West Virginia Rule of Civil Procedure* 60(b)(5) (pertaining to situations where "it is no longer equitable that the judgment should have prospective application") and 60(b)(6) ("any other reason justifying relief from the operation of the judgment").

On March 4, 2022, the circuit court held a hearing to designate "'a permanent location of the right-of-way on the ground,' as provided in the 'Judgment Order.'" More specifically, the hearing was held "to determine whether Mr. Teter's 'on the ground' survey was consistent with the Judgment Order and the Memorandum Decision of the West Virginia Supreme Court of Appeals, which affirmed…the location of the express, deeded, right-of-way as being that which is set forth in Exhibit M [the 1992 plat], introduced at the trial of this action."[3]

---

[3] The evidence presented at this hearing included the 2021 Plat prepared by Mr. Teter which retraced his survey of 1992; a March 3, 2022, plat ("2022 Plat") prepared by Mr. Teter which reflected that additional markers had been placed on the ground in the right-of-way to show the proposed positions for permanent markers for two additional points a and b; and the sworn testimony of Surveyor Teter (retained by Mr. Veach), and Surveyor Bennett (retained by Mr. Tice).

On October 18, 2022, the circuit court entered an order holding that the March 3, 2022, plat was consistent with trial exhibit M (the 1992 Plat) and showed the location of the deeded right-of-way over the land of Mr. Tice. This order also provided for the placement of permanent markers on the ground and the recording of the order with the deed records in the Office of the Clerk of the County Commission of Randolph County, West Virginia.

On October 28, 2022, Mr. Tice filed a motion asking the circuit court to alter or amend its order of October 18, 2022. This motion requested (1) the entry of a "tailored injunction" pursuant to Rule 60(b) and the law of injunctions, and (2) an order requiring Mr. Tice to construct and establish a new right-of-way to take the place of the deeded easement. In addition to requesting relief under Rule 60(b)(5) and 60(b)(6) as he had previously done, Mr. Tice requested relief pursuant to Rule 60(b)(2) (newly discovered evidence), Rule 52 (motion to alter or amend judgment), and Rule 59 (motion for new trial).[4]

On February 13, 2023, the circuit court held a hearing on Mr. Tice's motion to alter or amend. At the beginning of this hearing, Mr. Tice's counsel indicated that he was asking the court to relocate the deeded easement from the location adopted by the jury and

---

[4] On appeal, Mr. Tice has not argued that relief should have been granted pursuant to Rules 52 and 59.

affirmed by the Supreme Court of Appeals of West Virginia.[5] He also advised the court that his client would not move any fencing or fence posts which obstructed the deeded easement without a court order compelling him to do so. During this hearing, the court heard testimony from Mr. Tice's surveyor, Surveyor Bennett. After hearing this testimony, the court stated that it had already determined the location of the granted easement by its order of October 18, 2022, and that it would not grant relief pursuant to Rule 60(b) because it was inapplicable.

On April 28, 2023, the circuit court entered an order denying Mr. Tice's motion to alter or amend, reaffirming its prior holding that the March 3, 2022, plat showed the location of the deeded right-of-way on the ground, providing for the placement of permanent markers on the ground, and providing for filing attested copies of the October 18, 2022, and April 28, 2023, orders with the deed records of the County Commission. Mr. Tice was also directed to remove any fence posts lying within the fourteen foot right-of-way, with the proviso that he might "construct such gates over the [right-of-way] as may be reasonable and necessary to the farming use of his property, leaving an opening … the full [fourteen-foot] width" of the right-of-way. Mr. Tice appeals from the circuit court's orders of October 18, 2022, and April 28, 2023.[6]

---

[5] When questioned as to his legal authority for relocating the right-of-way, he cited the Restatement (Third) of Property: Servitudes § 4.8 (Am. L. Inst. 2000). This appears to be the first time that this legal basis for locating the right-of-way was advanced in this case.

[6] Rule 19 oral argument was held on May 21, 2024.

## II. STANDARD OF REVIEW

We review the final order and the ultimate disposition of the circuit court under an abuse of discretion standard. We review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a de novo review. Syl. Pt. 2, *Walker v. W. Va. Ethics Comm'n*, 201 W. Va. 108, 109, 492 S.E.2d 167, 168 (1997).

A motion to vacate a judgment made pursuant to Rule 60(b) of the *West Virginia Rules of Civil Procedure* is addressed to the sound discretion of the court and the court's ruling on such motion will not be disturbed on appeal unless there is a showing of an abuse of such discretion. Syl. Pt. 5, *Toler v. Shelton*, 157 W.Va. 778, 778, 204 S.E.2d 85, 86 (1974).

We review rulings on injunctions for abuse of discretion. As stated in Syl. Pt. 11 of *Stuart v. Lake Washington Realty Corp.*, 141 W. Va. 627, 92 S.E.2d 891 (1956):

> Unless an absolute right to injunctive relief is conferred by statute, the power to grant or refuse or to modify, continue, or dissolve a temporary or a permanent injunction, whether preventive or mandatory in character, ordinarily rests in the sound discretion of the trial court, according to the facts and the circumstances of the particular case; and its action in the exercise of its discretion will not be disturbed on appeal in the absence of a clear showing of an abuse of such discretion.

## III.  DISCUSSION

### A.  *Consistency of 2021 and 2022 Plats With the 1992 Plat*

A main component of Mr. Tice's argument is that the 2021 and 2022 Plats were revisions of the 1992 Plat, rather than a placement of the 1992 points on the ground as the circuit court had ordered. According to Mr. Tice, Surveyor Teter's failure to comply with the circuit court's Procedural Order by twice revising the plat previously approved by the jury and affirmed on appeal, and "conspicuously" failing to place all points on the ground as ordered by the circuit court, gave the circuit court ample reason to pursue relief under Rule 60(b). The necessity for such revisions when an attempt was made to locate the 1992 points on the ground allegedly demonstrated that the 1992 Plat was unworkable and contrary to both the jury's verdict and the granted right-of-way. Having compared the plats, we disagree, finding that they are essentially the same, and exactly the same for that portion of the right-of-way which lies near Mr. Tice's garage apartment.

On the 2021 and 2022 Plats, moving from Mr. Veach's property line to Route 24 in a generally southeasterly direction, the deeded right-of-way is initially marked by Railroad Spike 2, and nails set at Points A, B, C, and D.[7] At the hearing on March 4, 2022, the surveyors for both parties testified that these calls were exactly the same as on the 1992

---

[7] This portion of the right-of-way passes close by Mr. Tice's garage apartment and through his fields to the edge of Mr. Brown's property. The portion of the right-of-way between point D and Route 24 consists of a gravel driveway.

Plat. Pleadings filed by Mr. Tice in the circuit court also concede that this portion of the right-of-way is the same on both the 1992 and 2021 Plat.[8] On appeal, Mr. Tice has not argued that these calls differ between the 1992 and the 2021 and 2022 Plats, but he does assert that the plats differ for that portion of the right-of-way between point D and Route 24, specifically concerning points a, b, and c on the 2021 and 2022 Plats. Mr. Tice has not challenged the placement of points d and e or the distance between them on the 2021 Plat and the 2022 Plat.[9]

The portion of the right-of-way between Point D and Route 24 consists of a gravel driveway. Point D marks the end or top of the driveway. According to a November 29, 2021, email from Surveyor Teter to Mr. Veach and his counsel, point a is located at a bend in the driveway, while point b is at the intersection of the gravel driveway and the Old

---

[8] In footnote 2 of his Renewed Motion and Memorandum in Support of Tailored Injunction, Mr. Tice states that the calls from B to C and from C to D are identical on the 1992 and 2021 Plats. In that same footnote, he discusses the portion of the right-of-way between Mr. Veach's property and Point B. Regarding the 1992 Plat, he observes that the first call moving south from Veach's property was "S 44-41 E 563.7." This stretch of the right-of-way included a parcel of land owned by Mr. Brown measuring 50.5 feet in width. On the 2021 Plat, Mr. Teter added a new point A marking the edge of Mr. Brown's land. The call from A to B is "S 44-41 E. 513.65" because it does not include the 50.5-foot strip of Mr. Brown's land. The court notes that this change to reflect the existence of the Brown parcel does not affect the location of the right-of-way across Mr. Tice's property.

[9] According to Teter's report which accompanied his 2021 Plant, points d and e represent the corners of the southwestern edge of the state's right-of-way for Route 24. They are not meant to mark the center line of the right-of-way.

Poor Farm Road.[10] The right-of-way between point b and point c lies on the Yoakum property, rather than the property of Mr. Tice, and all the driveway between point c and Route 24 lies within the right-of-way purchased by the State Road Commission when they built Route 24.

When Mr. Teter prepared his 1992 Plat, he used a "total station"[11] to determine bearings and distances between Mr. Veach's property line and point D. For the portion of the right-of-way which followed the gravel driveway, however, he used a handheld compass to take bearings (which is not as precise as using a total station) and estimated distances instead of actually measuring them, resulting in approximate calls. He thought that approximate values would be sufficient because he assumed that the parties would not dispute the location of that portion of the right-of-way which generally followed the driveway.[12] Moreover, he believed that monuments were more important than calls, and

---

[10] On the 2021 and 2022 Plats, upper case letters are used to indicate points on the right-of-way from the boundary line between the Tice and Brown parcels down to the top of the driveway, while lower case letters are used to label points between the top of the driveway and Route 24.

[11] According to Mr. Teter, a total station is an electronic surveying instrument which provides accurate and precise bearings and distances. It "combines the function of an old transit to turn angles and use[s] an electronic distance meter to measure distances."

[12] In his 2021 Report of Survey for John S. Veach Retracement of Right of Way Across Tice Tract, Mr. Teter explained that:

> From point D to the apparent edge of the 4-H Camp Road
> (Secondary Route 24) the 1992 bearings and distances were
> approximate, with the bearings observed by hand compass, and
> the distances estimated rather than measured. I did not use the

16

that the driveway was a monument unlikely to significantly change because of its steep banks. The two calls on the 1992 Plat closest to Route 24 are designated "S 37 E 78'+/-" and "S 62 E 84'+/-" with the +/- indicating that they are approximate.

In 2021, when Surveyor Teter retraced his earlier survey, he used a total station to determine all the points on the right-of-way. Not surprisingly, the points associated with the gravel driveway are somewhat different on the 2021 Plat and the 2022 Plat compared to the 1992 Plat because one set of points was actually surveyed while the other set was merely approximated. On his 2021 and 2022 Plats, he added five "Additional Corner Notes:" "a-center of gravel drive," "b-center of gravel drive at int. with old road," "c-center of gravel drive at int. with public r/w," and "d/e-cor. Points of public r/w." Relevant to this discussion, he also added "Additional Line Data" for "b to c, r/w across Yoakum [tax parcel] 136-4.6," and for "c to e, edge RT. 24 r/w." The bearings and distance

_____

total station to survey the last two lines shown at the southeast end of the right of way on the 1992 plat. The bearings and distances were followed by the +/- symbol to indicate they were approximate. I somewhat naively concluded that since they were in a clearly defined gravel road the location of that portion of the right of way would not be an issue, so it would not be necessary to actually survey those points at that time. Those approximate measurements generally follow the location of the presently used gravel driveway which runs from point D, through a, b, and c to the edge of the public road pavement approximately 55 feet to the southeast of point c. … It appears the driveway between point D and Secondary Route 24 is in generally the same location as in 1992, though there has apparently been some grading and perhaps widening of that driveway during the intervening 29 years.

17

for "b to c" were S 60.42' E 8.33," while the bearings and distance for "c to e, edge Rt. 24 r/w" were "S 53.04 W, S 36.56 E 40.00."

According to the Report of Survey for John S. Veach Retracement of Right of Way Across Tice Tract, which was attached to and incorporated into the 2021 Plat, the portion of the right-of-way on the gravel driveway between b and c lies on the Yoakum tract, "so it does not appear that Mr. Tice should be entitled to regulate Mr. Veach's use of that portion of the right of way." The same report indicates that the portion of the right-of-way between points d and e is the southwestern edge of a public right-of-way owned by the State Road Commission and also should not be subject to Mr. Tice's regulation. The portion between points D and b lies on Mr. Tice's property and generally follows the gravel driveway.

During the hearing on March 4, 2022, Mr. Teter was questioned concerning the revised calls for points a and b on his 2021 and 2022 Plats and the following colloquy ensued between him and counsel for Mr. Veach:

> Q: … There is a question that Mr. Bennett [Mr. Tice's surveyor] raised regarding lower case a and lower case b. Are they in the identical location[s]that were set forth in the plot [sic], Exhibit M, 1992?
>
> A. Yes. They are the bearings and distances on those. Lines on the 1992 plat were based upon … bearings using a hand compass and the distance[s] were estimated. They were on

18

the existing gravel driveway. And so far as I can tell, there has not been substantial changes on that portion of the existing driveway. So, for retracement purposes, the existing gravel driveway is what the approximate bearings and distances were indicating. And I have now measured those with more precision.

Q: And is it your belief and your opinion professionally expressed in a report that you have---we filed with the Court that those two calls again accurately represent the Exhibit M, the plat of 1992?

A. Yes.

During his direct examination, Surveyor Teter also testified that the centerline on his 2021 Plat did not strike any of the existing buildings on the Tice property. [13]

On cross examination by Mr. Tice's counsel, Mr. Teter admitted that the calls for points a, b, and c were not mathematically identical, but reaffirmed that they were merely more precise versions of his earlier approximations, saying:

The survey I made in … 2021 is a retracement of the 1992 survey. The bearings and distances on the last two lines closest to secondary Route 24 are not identical to the 1992 survey. Because on the 1992 survey, those bearings . . . — I used a

---

[13] We understand that Mr. Tice is not claiming that the designated right-of-way runs through his garage apartment, or that the garage apartment would have to be removed, in order for Mr. Veach to use his right-of-way. Rather, the garage apartment directly faces the right-of-way, and lies in close proximity thereto. *See* Pet. Br. at 2 ("Teter's plat put the easement directly in front of Tice's newly constructed garage apartment."), 14 (stating that the 1992 Plat placed the right-of-way "directly in front of Tice's garage apartment"), 18 (noting that the circuit court's order required Tice to remove "approximately" seven fence posts and an "interior property gate" but not mentioning the garage apartment as something that would have to be removed).

hand compass, which is not a precision instrument. And I estimated the distances.

On the more recent plat, I more precisely measured those. Whenever I put those dimensions on the 1992 plat, those estimates on there---they were of the position of the existing gravel driveway. And I have now more precisely measured the actual position of that gravel driveway which could not have changed much since there is a fairly steep bank on both sides of the driveway.

After hearing the testimony of both surveyors, reviewing the relevant plats and pleadings, and considering the arguments of counsel, the circuit court issued an order finding "the testimony of Mr. Teter to be credible as to the location of the right-of-way; the plats dated September 19, 2021, and March 3, 2022, are, in the Court's opinion, consistent with said Exhibit M [the 1992 plat] and do represent the location, on the ground, of the express, deeded, right-of-way." Given the record on appeal, we cannot conclude that the circuit court was clearly wrong in its assessment that the 1992, 2021 and 2022 Plats were essentially the same and accurately placed the location of the right-of-way on the ground. In addition to hearing the testimony of both surveyors at the hearings to establish the location of the right-of-way on the ground, the circuit court judge presided over the underlying trial where the jury adopted the 1992 Plat prepared by Mr. Teter. This trial included a jury view of the right-of-way, as well as the presentation of testimony, plats and aerial photographs of the land.

## B. Restatement of Property: Servitudes

Mr. Tice also argues that even if the 1992 and 2021 plats are the same, the circuit court should have allowed him to relocate the right-of-way under Restatement (Third) of Property: Servitudes § 4.8 (3) (Am. L. Inst. 2000) which deals with relocating easements when it benefits the servient estate but does not adversely affect the dominant estate.[14] This section provides in pertinent part that:

> Except where the location and dimensions are determined by the instrument or circumstances surrounding creation of a servitude, they are determined as follows: …
>
> (3) Unless expressly denied by the terms of an easement, as defined in § 1.2, the owner of the servient estate is entitled to make reasonable changes in the location or dimensions of an easement, at the servient owner's expense, to permit normal use or development of the servient estate, but only if the changes do not
> (a) significantly lessen the utility of the easement,
> (b) increase the burdens on the owner of the easement in its use and enjoyment, or
> (c) frustrate the purpose for which the easement was created.

---

[14] In connection with his request to relocate the right-of-way, Mr. Tice suggested two alternative rights-of-way which he alleged would alleviate his concerns without reducing the utility of the right-of-way to Mr. Veach. In fact, one of the suggested alternatives would allegedly have been more convenient for Mr. Veach while simultaneously benefiting the servient estate by avoiding the garage apartment Mr. Tice had recently built and by going up the side of the Tice farm instead of bisecting it. Regardless of whether the Restatement applies, with its emphasis on equity, it is unfortunate that the parties were unable to reach an amicable resolution of their dispute without litigation.

Although the Supreme Court of Appeals of West Virginia has adopted or cited other sections of the Restatement of Property: Servitudes,[15] it has never addressed the applicability of this section, which represented the minority rule in the United States when it was adopted by the American Law Institute ("ALI") in 2000. *See* Comment f to § 4.8 ("This subsection adopts the civil-law rule that is in effect in Louisiana and a few other states. It rejects the rule espoused by the weight of authority in the United States—that the servient owner may not unilaterally relocate an easement.").[16]

Mr. Veach argues that Mr. Tice's reliance on the Restatement is misplaced because it does not apply, noting that § 4.8 is limited by its own terms to situations "where the location and dimensions are [not] determined by the instrument or circumstances surrounding the creation of a servitude." In this case, the location and dimensions were fixed by the jury's verdict, embodied in the circuit court's order, and affirmed by the

---

[15] *See, e.g., McElroy Coal Co. v. Dobbs*, 244 W. Va. 380, 386, 388, 853 S.E.2d 620, 626, 629 (2020); *Cantrell v. Cantrell*, 242 W. Va. 72, 82 & n.24, 829 S.E.2d 274, 284 & n.24 (2019); *O'Dell v. Stegall*, 226 W. Va. 590, 605, 703 S.E.2d 561 *passim* (2010); *Newman v. Michael*, 224 W. Va. 735, 740, 742, 688 S.E.2d 610, 615, 617 (2009).

[16] Section 4.8 has met with mixed reaction since it was adopted by the ALI, with some jurisdictions adopting it and others rejecting it. See Jason B. Binimow, Annotation, *Restatement (Third) of Property: Servitudes 4.8(3) (2000) Governing Changes in Location or Dimensions of Servitude*, 39 A.L.R. 7th Art. 7 (originally published in 2018) (collecting cases); Jon W. Bruce, Jams W. Ely, Jr., and Edward T. Brading, *The Law of Easements & Licenses in Land* 7:17, Westlaw (database updated March 2024) (collecting cases).

Supreme Court of Appeals. Thus, according to Mr. Veach, the location and dimensions of the right-of-way were not uncertain.

We find it unnecessary to adopt or reject § 4.8(3) of the Restatement, or to determine whether it would apply to the facts of this case, because the applicability of this section was not raised at trial when the jury found that the location of the right-of-way was the same as depicted on the 1992 Plat, or when the Supreme Court of Appeals of West Virginia affirmed the order incorporating the jury's verdict. Neither Rule 59(e) nor Rule 60(b) are appropriate for presenting new legal theories, arguments or claims that could have been raised previously. *See Mey v. Pep-Boys-Manny, Moe & Jack*, 228 W. Va. 48, 717 S.E.2d 235 (2011) ("A motion under Rule 59(e) is not appropriate for presenting new legal arguments, factual contentions, or claims that could have previously been argued"); *Concordia College Corp. v. W.R. Grace & Co.*, 999 F.2d 326, 330 (8th Cir. 1993) (affirming that appellant could not use Rule 59(e) to raise new legal theories); *Jinks v. AlliedSignal, Inc.*, 250 F.3d 381, 385 (6th Cir. 2001) ("Rule 60(b) does not allow a defeated litigant a second chance to convince the court to rule in his or her favor by presenting new explanations, legal theories, or proof."); *Alajami v. Methodist Hosp.*, 639 F. App'x. 1028, 1030 (5th Cir. 2016) ("Rule 60(b) motions for reconsideration cannot be used to argue a new legal theory."); *Provident Sav. Bank v. Popovich*, 71 F.3d 696, 700 (7th Cir. 1995) ("Failing to raise all available theories below… does not justify relief under Rule 60(b)(6)."); *In re DEF Investments, Inc.*, 186 B.R. 671, 681 (Bankr. D. Minn. 1995) (Rules

59(e) and 60(b) are "not designed to furnish a vehicle by which a disappointed party may reargue matters already argued and disposed of, nor are they aimed at providing a mechanism by which new arguments or legal theories, which could and should have been raised prior to the issuance of judgment, can be later advanced.").

### C. Removing Obstructions

In its April 28, 2023, order, the circuit court directed:

> That Defendant [Tice] shall, within 30 days of the marking by [Surveyor] Teter of the fence posts lying within the 14 foot right of way, remove those obstructions, and shall provide Plaintiff with unimpeded use of the granted easement, provided however, that Defendant shall be permitted in the future to construct such gates over the 14 foot Right-Of-Way as may be reasonable and necessary to the farming use of his property, leaving an opening for Plaintiff's [Veach's] use, the full 14 foot width thereof at such gate openings.

On appeal, Mr. Tice argues that this admonition by the circuit court constituted an injunction and that the lower court should have expressly balanced the equities and made detailed findings concerning the benefit to the plaintiff and the burden to the defendant before imposing it. Mr. Tice also argues that no prior notice was given of an application for an injunction, that the circuit court failed to consider whether prior notice was required under the circumstances, and that the circuit court failed to consider whether Mr. Veach should have been required to post a bond as a condition to issuance of an injunction. In response, Mr. Veach argues that an injunction was not requested, and that the

24

circuit court merely made it clear that the right-of-way, the location of which had now been confirmed, could be used without interference or obstruction.[17] Whether the circuit court's action in requiring the removal of obstructions be treated as an injunction or merely an attempt to clarify and enforce its judgment, we find no error.[18]

Given the circumstances of this case, Mr. Tice was clearly on notice that he might be ordered to remove obstacles to the right-of-way. The complaint filed by Mr. Veach contained a request for an injunction. Prior to its entry of an order requiring the removal of any fence posts which might obstruct the right-of-way, the circuit court was informed that Mr. Tice would not remove any obstacles unless he was ordered to do so. Prior to that order,

---

[17] According to Mr. Veach, he never "sought an injunction, but only wanted clarity from the circuit court that the location of the right-of-way having now been confirmed, that right-of-way can now be used without [interference] or obstruction." Resp. Br. at 15-6.

[18] In his complaint, Mr. Veach requested both preliminary and permanent injunctions, in addition to declaratory relief. It does not appear that a motion was ever made to obtain a preliminary injunction, although the circuit court's directive to remove any fence posts lying in the right-of-way was effectively a permanent injunction. We note that the procedural and evidentiary requirements for preliminary and permanent injunctions are different. For example, the likelihood of success on the merits is always an important consideration in determining whether to grant a preliminary injunction, whereas, with a permanent injunction the party requesting injunctive relief has already prevailed. Moreover, balancing of hardships is also an important consideration where a preliminary injunction is concerned, but not with a permanent injunction. Regarding bonds, the length of time that a bond, if any, may be required depends on the nature of the proceedings. Thus, when a trial court decides, in its discretion, to require a bond for a permanent injunction, it should be limited to that period before "the time for appeal has expired or the appellate process is concluded." *See* Syl Pt. 9, *Pioneer v. Hutchinson*, 159 W. Va. 276, 220 S.E.2d 894 (1975).

Mr. Tice had filed his own motion for an injunction, and he was on notice that it would be heard at the hearing on February 13, 2023, which preceded the entry of an order requiring the removal of obstacles.[19] Prior to the final hearing, Mr. Tice repeatedly argued in his pleadings that Mr. Veach would need an injunction requiring the removal of fence posts and a gate in order to use his claimed right-of-way. As Mr. Tice noted in his initial brief at page 7, when he filed his motion for a tailored injunction prior to this hearing, he "pointed out that the Court must enter an injunction order, **either ordering the removal of Tice's fence posts and gate** or relocating Teter's platted right-of-way." Pet. Br. at 7 (emphasis added).

Once the location of the right-of-way had been determined, there was no need to balance the equities. *See Hark v. Mountain Fork Lumber Co.*, 127 W. Va. 586, 597, 34 S.E.2d 348, 354 (1945) ("Once it is ascertained that a person has established property rights which he seeks to protect by injunction, he will not ordinarily be deprived of that remedy on the ground that the injunction operates to the inconvenience of the person against whom the remedy is invoked, or that the rights are of little value to the holder thereof."). As far as we can determine from the record, Mr. Tice did not request the circuit

---

[19] In fact, during the hearing held on March 4, 2022, counsel for Mr. Tice stated that "wherever [the] Court places it [the right-of- way], there should be an injunction issued." App. 95.

court to require a bond before ordering Mr. Tice to remove his fence posts. [20]It is discretionary with a court whether to require a bond, *see Collins v. Stewart*, No. 11-0056, 2012 WL 2924133, at *6 (W. Va. Feb. 14, 2012) (memorandum decision), *Kessel v. Leavitt*, 204 W. Va. 95, 160, 511 S.E.2d 720, 785 (1998), and we find no abuse of discretion here. Moreover, we find that the circuit court's order was sufficient for our review.

Mr. Tice warns in his initial brief on appeal that allowing the right-of-way to remain as it is without modification will result in conflict that will bring the parties back before the court:

> Veach will have the right, per the language of the Deed granting the right-of-way, to make any manner of improvement and paving of the right-of-way which would permanently destroy the center of Tice's field for farming. Tice's use of the area in front of Tice's first floor garage apartment, where Tice parks and services his farm equipment, will conflict with Veach's

---

[20] Even where a bond may be required, the party obtaining an injunction should be given a reasonable opportunity to provide a bond before the injunction is dissolved. As noted in 10A Michie's Jurisprudence of Virginia and West Virginia *Injunctions* § 93 at 150-51 (2022):

> [W]hile the injunction should not take effect until the bond is given, if by accident it is made to take effect before, this is not sufficient error to warrant the appellate court in reversing the order granting the injunction. A party ought to be allowed a reasonable time after his attention is called to the defect in the bond, by rule or notice, in which to execute a proper bond…

*See also Kessel v. Leavitt,* 204 w. Va. 95, 161, 511 S.E.2d 720, 786 (1998) ("…it would seem that before an enjoined party can obtain relief from an injunction issued without the appropriate bond, he/she must raise the issue to permit the party obtaining the injunction an opportunity to cure the alleged defect.").

chosen right-of-way and put the parties in conflict with each other, unnecessarily creating nuisance conditions that will bring the parties back before the court. In fact, Tice's private residential property, where his three-old-grandson lives and plays in the yard, will suddenly be open to any manner of traffic at the whim and discretion of Veach, his guests and farm hands. Tice's property will suddenly be open to trespassers with no means of identifying them or preventing their entry.

Although it is conceivable that Mr. Veach or some future owner of the right-of-way may use it in such a way as to constitute a nuisance, we cannot assume that such unreasonable use will necessarily occur, especially when Mr. Tice alleges that Mr. Veach has infrequently used this right-of-way in the past.

### D. Denial of Rule 60 Motion

Mr. Tice sought relief under Rule 60(b)(2), 60(b)(5) & 60(b)(6) on the grounds of newly discovered evidence, that it was no longer equitable to enforce the judgment, and any other reason justifying relief. Rule 60(b) was invoked because Surveyor Teter was allegedly unable to locate the right-of-way on the ground even using his "revised" plats. According to Mr. Tice, the 2021 and 2022 Plats were not the same as the 1992 Plat and were inconsistent with the both the 1960 grant and the jury's verdict.[21] He

---

[21] According to Defendant's Motion to Alter or Amend Judgment Order:

> To use the right-of-way as located by Veach's surveyor, structures would have to be removed that were in existence over the course of at least 25 years during which period Veach claims to have used the granted right-of-way. Not only does

contended that Mr. Teter's unsuccessful efforts to properly mark the right-of-way on the ground constituted "newly discovered evidence." He also argued that it was "no longer equitable that the [August 30, 2019] judgment should have prospective application" because his son and grandson had moved into the garage apartment and the right-of-way ran through the yard where his grandson played. Finally, he asserted that there was "other reason for relief" given the circumstances of this case, noting among other factors that Mr. Veach had allegedly waited until he started building his garage apartment to inform him of his 1992 Plat and had other means of access to his property.

The circuit court held that relief was not available under any of the grounds covered by Rule 60(b). We find that the circuit court did not abuse its discretion in denying relief under Rule 60(b).

Newly discovered evidence does not include events which occurred after trial. Louis J. Palmer, Jr. & Robin J. Davis, *Litigation Handbook on West Virginia Rules of*

surveyor Teter's 1992 plat take the center of the right of way wildly up a bank south of the driveway leading from Route 24, but it takes the right-of-way north of the driveway near the top of the hill at Teter's marked Point "D" through the location of a former fence line. Finally, Teter's plat takes the right-of-way through a pre-existing fence line where fence posts remain in the vicinity of Teter's Points "B" and "C." This newly discovered evidence was not available to Tice (or the Court) prior to surveyor Teter's placement of temporary markers on Tice's property.

*Civil Procedure* at 1404 (5th 2017). Nor does it include information, which was available to the movant, *Powderidge Unit Owners Ass'n v. Highland Properties, Ltd*., 196 W. Va. 692, 474 S.E.2d 872 (1996), or could have been discovered through the exercise of reasonable diligence, prior to trial. *Boryan v. U.S*., 884 F.2d 767 (4th Cir. 1989). In this case, the 2021 survey to locate the centerline on the ground, which Mr. Tice contends was newly discovered evidence, was conducted after the trial. However, the fact that the centerline came near the garage apartment or near fence lines could have been ascertained by Mr. Veach before trial. In 2009, he was provided with the 1992 Plat with surveyed calls for that portion of the right-of-way between Mr. Veach's property line and the top of the driveway.[22] This portion of the right-of-way contained the apartment garage and the fence lines allegedly lying in the right-of-way. He could have employed his own surveyor to see where the points on that portion fell on the ground.

Mr. Tice's briefs on appeal recognize the 1992 Plat was sufficient to put a person on notice that the right-of-way surveyed by Surveyor Teter would not go south around the garage apartment. At page 12 of his Reply Brief, he states that Mr. Veach:

> …waited until after that structure [the garage apartment] was built to have his current attorney disclose Teter's 1992 plat, which contained Teter's sketch of the right of way. Up to that

---

[22] The parties agree that the calls on the 1992 and 2021 plats are identical between Mr. Veach's property line and the top of the gravel driveway marked as Point D on both plats. Although the calls for the gravel driveway were approximate, Mr. Tice could have traced the right-of-way from Mr. Veach's property line using the surveyed calls for that portion and determined that they passed near his garage apartment.

point, Petitioner [Tice] had no way of knowing that Respondent would attempt to locate the right-of-way in the path of Petitioner's garage apartment instead of taking it to the south around the area of the structure in accord with the stated intent of the grant.

Similarly, at page 14 of his reply brief, he stated that:

Respondent [Tice] and [Surveyor] Teter knew before disclosing this plat [the 1992 Plat] that the designated right-of-way path would land directly in front of Petitioner's structure, and Teter knew, or should have known, that the right-of-way depicted on this 1992 plat would run through the pre-existing fence line and existing posts, and even dangerously close to the front of the 1930's house referred to in the Supreme Court's order remanding the case.

Relief may be granted under Rule 60(b)(5) where prospective application of a judgment would not be equitable, but this standard was not met in this case. "The type of changes in condition that merit such relief must fall within one of the following circumstances: (1) the dangers which the decree was meant to foreclose must almost have disappeared; (2) the movant is suffered unexpected hardship; or (3) a showing of a grievous wrong being evoked by new and unforeseen conditions." Louis J. Palmer, Jr. & Robin Jean Davis, *Litigation Handbook on West Virginia Rules of Civil Procedure* at 415 (5th ed. 2017). "Because the standard is an exacting one, many applications for relief on this ground are denied, particularly when the court finds that changed circumstance were contemplated at the time the decree was entered." Charles Alan Wright & Arthur R. Miller, 11 *Federal Practice and Procedure* § 2683, Westlaw (3rd ed. database updated June 2024) (emphasis

31

added). In this case, Mr. Veach knew or should have known as early as 2009 that the right-of-way might pass close to his garage apartment,[23] it was always intended that his son and grandson would occupy the premises, and they did not move in until after the location of the easement had been determined by the jury and affirmed by the Supreme Court of Appeals of West Virginia.[24] Mindful of the admonition in Syl. Pt. 2, *Nancy Darlene M. v. James Lee M.,* 195 W. Va. 153, 464 S.E.2d 795 (1995) that this subsection should be cautiously applied, we find no abuse of discretion in the circuit court's denial of relief under Rule 60(b)(5).

Relief "for other reasons" under Rule 60(b)(6) may only be granted under "extraordinary circumstances." *State ex rel. First State Bank v. Hustead*, 237 W. Va. 219, 223, 786 S.E.2d 479, 483 (2015). The discretion of trial courts is entitled to particular

---

[23] When Mr. Tice was constructing his garage apartment, he was provided with a copy of the 1992 Plat by certified mail dated June 12, 2009. The cover letter from Mr. Veach's attorney advised that a deeded right of way existed through Mr. Tice's property for the benefit of Mr. Veach, extending from Route 24 to the Veach property along a driveway that had been used by Mr. Tice's father. Mr. Tice was warned that his "pre-construction activities" "could eventually interfere with Dr. Veach's continued free and open use of the right of way" and "that any disruption of the same would be a violation of Dr. Veach's property rights and will not go unchallenged." Mr. Tice could have used the calls on this survey to determine the location of the right-of-way between the top of the gravel driveway and Mr. Veach's property line. The garage apartment was located within this portion of the right-of-way.

[24] "By the time of the proceedings on remand, Mr. Tice had finished the interior of the garage apartment and his son and grandson had moved in as was the original purpose." Pet. Br. at 13. "Veach is ill positioned to complain about Tice's **post-trial use** of the garage apartment." *Id.* (emphasis added).

deference when considering relief under this catch-all provision. *See Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 670-71 (2d Cir. 1977) ("While any motion under Rule 60(b) is addressed to the discretion of the trial court… this discretion is especially broad under subdivision (6), because relief is granted 'when appropriate to accomplish justice…'"), cited by *State ex rel. First State Bank of Hulstead*, 237 W. Va. at 224, 786 S.E.2d at 484 (2015). In this case, we find no abuse of discretion in the circuit court's decision to deny relief under this subsection.

Although recognizing that decisions regarding Rule 60(b) relief are reviewed for abuse of discretion, Mr. Tice contends that Rule 52(a) imposed a non-discretionary duty to make adequate findings of fact and conclusions. Rule 52(a), however, does not apply to rulings on Rule 60(b) motions, *see* Rule 52(a) (stating that findings of fact and conclusions of law are unnecessary for motions which are not identified in Rule 52); *cf. Taylor v. Elkins Home Show, Inc.*, 210 W. Va. 612, 558 S.E.2d 611 (2001) (holding that Rule 52(a) did not apply to rulings on Rule 50(b) motions). Even if it did, it is not necessary to remand a case for findings of fact and conclusions of law when "there is sufficient information in the record regarding the facts which control the proper disposition of the case [.]" *Prete v. Merchants Prop. Ins. Co. of Indiana,* 159 W. Va. 508, 512, 223 S.E.2d 441, 444 (1976). In this case, the order entered by the circuit court, although it could have been more detailed, is adequate for our review.[25]

_____

[25] Independently of Rule 25, the Supreme Court of Appeals of West Virginia has held that "[w]here a Rule 60(b) motion is made to set aside a judgment and there is a

## IV. CONCLUSION

We find no error in the circuit court's decision not to relocate the right-of-way pursuant to Rule 60(b) and the Restatement (Third) of Property: Servitudes 4.8(3) (Am. L. Inst. 2000) or to require Mr. Tice to remove any obstructions to the right-of-way. Accordingly, we affirm the October 18, 2022, and April 28, 2023, orders of the circuit court.

Affirmed.

conflict as to the facts on whether there is a ground to set aside the judgment, the trial court should hold a hearing to resolve the disputed facts and to make some findings relative thereto." Syl. Pt., *Meadows v. Daniels*, 169 W. Va. 237, 286 S.E.2d 423 (1982) (per curiam). Once again, however, we find the order entered by the circuit court sufficient for our review and decline to remand it for more detailed findings of fact and conclusions of law. *See generally* Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2575 Westlaw, (3d ed. database updated April 2023) (Findings of fact and conclusions of law "are unnecessary to a ruling on a motion for relief from judgment under Rule 60(b) when the legal issues raised on the motion are 'straightforward and readily comprehensible.'")